Allread, J.
This case involves a construction of the will of Margaret Blacker in respect to after-acquired real estate.
It appears that the will was executed on November 5, 1890.
At the time -of the -execution of the will -the testatrix-owned a farm, of which she died seized. At the date of the execution of the will, her husband, Jefferson T. Blacker, owned real estate, one-twentieth thereof having been acquired by descent, and the nineteen-twentieths thereof by purchase.
*181 Subsequent to the making of the will Jefferson T. Blacker died intestate, and his estate descended to Margaret Blacker, who took a life estate in the •one-twentieth and a fee simple in the nineteen-twentieths. 'Subsequently Margaret Blacker died seized of the fee simple estate in the nineteen-twentieths of said real estate in addition to the farm owned by her at the date of the will.
It is contended by the plaintiff, a brother of Jefferson T. Blacker, that the nineteen-twentieths ■of the real estate acquired by purchase, and owned by Jefferson T. Blacker at the time of his death, •did not pass under the will of Margaret Blacker, but descended upon her death as intestate property.
It is conceded that under the common law after-acquired real estate did not pass under a will, and that the following statute, Section 10579, General ■Code, governs in this state:
“Any estate, right or interest, in lands or personal estate or other property acquired by the •testator after making his will, shall pass thereby, as if held or possessed at the time it was made, if such manifestly appears by the will to have been his intention.”
The defendants claim under the 7th and 8th •clauses of Item 3. These clauses are as follows:
“I give and bequeath to my brother, George W. Litten, should he survive my said husband, Jefferson T. Blacker, all my real estate during the term ofj his natural life.
“I give and bequeath to the children of my brother, George W. Litten, after the death of my said beloved husband and after the death of my Said brother, George W. Litten, all the real estate *182 of which I die seized and to them and their heirs and assigns forever to be divided equally among them share and share alike.”
Under the general scheme of the will, after providing for the payment of just debts and funeral expenses, the testatrix devised to her husband, Jefferson T. Blacker, “all the real estate of which I may die seized during the term of his natural life.” In Item 3 the testatrix bequeathed to his children, if any should be born and survive, “all the residue of my property both real and personal, after the payment of my just debts and after the death of my said husband,” in fee simple. The testatrix then provides that if she should have no surviving child or children, “then I devise my said property as follows.”
There are several clauses under this item providing for specific devises. The 5th clause gives to the husband “all the rest and residue of my personal property of which I may die seized after the payment of debts and funeral expenses” and excepting specific devises. The 6th clause provides for a monument, and the 9th clause provides for a remainder in the event of the death of George W. Litten’s children without issue.
The arguments pro and con rest largely upon, the intensive “manifestly” appearing in the concluding clause of Section 10579, General Code. It is contended by plaintiff that the intention to include after-acquired real estate, and particularly the real estate acquired by her from her husband, does not manifestly appear from the will of Margaret Blacker.
*183 Coming to clauses 7 and 8, under which defendants claim, the life estate of George W. Litten is created expressly “in all my real estate.” The remainder to the children of George W. Litten is expressly given “in all the real estate of which I die seized.” If we confine our construction of the will to the express language used we would have no difficulty in holding that an estate was created by clause 8 in favor of the children of George W. Litten in “all the real estate of the testatrix of which she died seized.” This would include, ex vi termini, the after-acquired estate of the testatrix. The life estate of George W. Litten, which is created under Clause 7 in “all my real estate,” is less conclusive than Clause 8 creating the remainder.
In passing it may be said that even these words “all my real estate” are sufficient under the adjudications of our supreme court and the weight of authority in the lower courts to carry after-acquired real estate. The case of Pruden v. Pruden, 14 Ohio St., 251, is a leading case and has never been criticised nor questioned by any subsequent decision of the supreme court. In that case the devise to the wife for life was of all my moneys, credits, rights, 'and ehoses in action, personal and real estate and property. Under this general language, in connection with the general scheme of the will, it was held that after-acquired property passed.
Judge Ranney, in one of his characteristic opinions, after referring to the common law and the enabling statute, says at page 253:
“Indeed, every line of this will looks to his death, and the situation of his property at that time, as the starting point in his dispositions. It is then *184 that his debts are to be paid, and it is then that his wife is to take, either for life or otherwise, all the residue of his ‘personal and real estate, and property’ of every description; or, if she is not then living, that it 'is all to go to his heirs, as though the ‘will had not been made.’ ”
These are the features of the Pruden will upon which Judge Ranney bases the conclusion that after-acquired property passes. All the features of the Pruden will are found in the Blacker will under consideration, with the important addition that many devises expressly include “all the real estate of which I may die seized.” Devises containing less conclusive description are so entwined with the others as to make it clear that the same estate was intended throughout, and that the various terms of description were used interchangeably. In connection with the general scheme of distribution and the descriptive terms employed it was the clear intention of the testatrix to dispose of her entire estate at the time of her death. The case of Wright v. Masters, 81 Ohio St., 304, is not in conflict with the Pruden case. There the significant controlling fact was, as stated in the opinion, “the property therein devised by item one to Mary Masters during her life is definitely designated and specifically described, and there is in the provisions of said will no hint or suggestion anywhere of a purpose on the part of the testator to give her more than the property thus specifically described.”
The rule established in the Pruden case, that after-acquired property passes under general description of the testator’s property, has been fol *185 lowed and applied to various wills in the following cases: Lee v. Scott, 5 C. C., N. S., 369; Newton v. McKinstry, 16 C. C., N. S., 219, and Strock v. Strock, 6 Ohio App., 275.
See opinion of Judge Shauck in Farrar v. Fallestine, 4 C. C., 235.
It is contended, however, that it does not manifestly appear from Margaret Blacker’s will that she intended that the particular estate received by inheritance subsequent to the making of the will should be included in her will. It is contended that the testatrix contemplated that her husband would survive her and take the life estate provided for in Item 2, and that the estates created in favor of George W. Litten and his children are dependent upon the idea of the survivorship of the husband. In this connection counsel cite the case of Lepley v. Smith, 13 C. C., 189, and rely upon the somewhat analogous provisions of that will and the argument of the majority of the court in the opinion.
The Lepley case involved a devise of “all my property, both real and personal, moneys and effects.” It is difficult to harmonize that decision with the Pruden case, the case of Johnson v. Johnson, 51 Ohio St., 446, and the circuit court cases in which general descriptions of that character were involved. Nevertheless we think that the decision in the Lepley case should not be extended to a case like the present where the intention to include subsequently acquired property is much more clearly and definitely expressed.
It is true that the testatrix in the case at bar may have considered it probable that her husband *186 would survive her, and with that contingency in view made provision for him, and made other provisions in favor of her brother dependent upon the latter’s survivorship.
It appea’rs that the will of Margaret Blacker was made twenty-five years prior to her death. No evidence is offered to show that the testatrix was moribund or in extremis. It is a matter of common if not universal knowledge that there is no certainty of life, and, while the testatrix may have considered the probabilities of survivorship in favor of the husband, she must have been fully aware of the possibility that her husband might be the first called. She is presumed to have known the laws of nature and to have contemplated such possibility of the husband’s prior death and a subsequent acquisition of his property by deed or descent. The testatrix evidently intended by the words employed in the will to dispose of the estate owned by her at her death. The fact that she might subsequently acquire property, even if not expected at the time the will was executed, does not ereate an exception from the express terms of the devise. No one can know in advance what property may be subsequently acquired. Where a will clearly shows an intention to dispose of after-acquired property it is not important that the testator did not foresee or judge the source and nature of the property. Farrar v. Fallenstine, supra.
It is urged that Item 3 should be limited to property which could have been taken by the husband, and that the term “said property” in Item 3 refers to property which the husband could' have *187 taken and limits the character of the property carried in the subsequent clauses.
The force of this argument is met by the; frequent repetition in the subsequent clauses of words of description, making it clear that she intended to dispose of all her estate of which she might die seized.
We have reached the conclusion that it is manifest from the terms of the will that the testatrix intended to dispose of all the real and personal property which she owned at the time of her death, and that George W. Litten took a life estate and his children the remainder in fee in the real estate in controversy.

Demurrer to the second cause of action is sustained.

Kunicle and Ferneding, JJ., concur.
Judges of the Second Appellate District sitting in place of Judges Sayre, Walters and Middleton of the Fourth Appellate District.